# Burns *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Safety gates—Ordinance—Evidence.*

Where a railroad is the dividing line between a city and a township, an ordinance of the city requiring the railroad company to erect a safety gate on the township side of a grade crossing, is inadmissible in evidence in an accident case, even if the purpose of the offer of the ordinance is merely to show the dangerous character of the crossing.

Argued Oct. 10, 1904. Appeal, No. 104, Oct. T., 1904, by defendant, from judgment of C. P. Cambria Co., June T., 1903, No. 248, on verdict for plaintiff in case of Catherine Burns v. Pennsylvania Railroad Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before O'CONNOR, P. J.

Defendant presented, inter alia, the following points:

4. That the city of Johnstown did not have authority to require safety gates to be erected and operated on each side of the road, inasmuch as the southerly side thereof was in Lower Yoder township, and the court is requested to strike out the testimony relating thereto. *Answer:* The only effect this testimony could have is that of showing the dangerous character of the crossing. That the city of Johnstown attempted to make the defendant company erect safety gates there we say could only go to indicate to you the dangerous character of the crossing. You have no right to hold the railroad company responsible for not erecting safety gates because they would have been one means of warning persons about to go over the crossing of the dangerous character of the crossing. The city could not have compelled the railroad company to have erected safety gates in Lower Yoder township, because that territory is not within the jurisdiction of the city of Johnstown. This ordinance can only go to show the dangerous character of the crossing, and we submit this testimony to you for that purpose only. [4]

7. That under all the evidence the verdict should be for the defendant. *Answer:* We refuse that point. As we view the

case, the question is purely a question for the jury, and if we were to take the case from the jury we feel that we would be guilty of error. There are times when it becomes the duty of the court to say that the plaintiff has failed to introduce such evidence as would fasten responsibility upon the defendant, and when it would be proper to direct a verdict for the defendant or to direct a compulsory nonsuit because of the insufficiency of the testimony introduced, which would amount to the same as if no evidence at all were introduced. Therefore, we refuse this point. [7]

8. That positive proof that the whistle was sounded at the usual place and that the bell was being rung is of higher value than negative testimony of witnesses who did not hear it, and it should prevail.

The Court: In this connection we say to you that if you find, from the evidence, that the whistle was blown and the bell rung, at such place and in such manner that the decedent must have heard it and been warned, then, of course, it does not matter how many people did not hear it; but if the whistle was blown, as testified to by the witnesses, at a place where it is usual to blow the whistle, and the bell was rung, if the warning did not reach that crossing and could not be heard by persons going over it—was not of such character as the law contemplates—if the warning was not calculated to warn and did not warn persons passing over, it was unavailing. That question is entirely for you. If you find that the whistle was sounded after the train crossed the Morrellville crossing, and yet persons going over the Brownstown crossing could have heard and must have heard it, it was not necessary to have the whistle blown again. The fact we want to impress you with is whether the whistle, which evidently was sounded after leaving " SX " tower that morning, must have reached the ears of persons going over the Brownstown crossing, for if the persons going over there took their chances there could be no recovery. On the other hand, it was the duty of the persons conducting the train to give such warning as would be effective, and if they did not give such warning the defendant company would be responsible for their negligent acts. [8]

Verdict and judgment for plaintiff for $12,000. Defendant appealed.

*Errors assigned*, among others, were (4, 7, 8) above instructions, quoting them.

*H. W. Storey*, for appellant.—Under no principle of law can a document, which is admitted to be invalid, be used as testimony for any purpose : Barnes v. Mobile, 19 Ala. 707.

*E. T. McNeelis*, with him *William Williams*, for appellee.— The ordinance complained of was introduced simply for the purpose of showing the dangerous character of the crossing, and not for creating an additional liability upon the defendant : Herron v. Pittsburg, 204 Pa. 509 ; Penna. Co. v. James, 81* Pa. 194 ; Lederman v. Penna. R. R. Co., 165 Pa. 118.

OPINION BY MR. JUSTICE THOMPSON, December 31, 1904:

Appellee's husband was killed while crossing appellant's railroad at what is known as the Brownstown crossing in the suburbs of Johnstown, and for his loss the appellee brought this suit.

The deceased, who lived a short distance from that crossing left his home on January 9, 1903, at 6.30 in the morning to go to the Cambria Steel Works where he was employed. The morning was dark and there was a slight fall of snow. He reached the crossing and while passing over it was struck by a moving train of appellant and instantly killed. The southerly line of appellant's railroad is the dividing line between Lower Yoder township and the city of Johnstown and the road ending with McConaghy street is about sixty-six feet within the limits of the latter place. The crossing was one open to the view of the men in charge of trains and to people approaching it. There was conflicting testimony as to the speed of the train which caused the accident, some of the witnesses made it from forty to forty-five miles per hour and some made it less. It certainly, however, was not less than thirty miles per hour.

Appellant's negligence, it was contended, consisted in approaching this alleged dangerous crossing, at a high rate of speed, without giving signals within a proper distance. The dangerous character of the crossing, the high rate of speed, and the absence of the proper signals were the elements which constituted appellant's alleged negligence.

As part of the proofs tending to establish the dangerous character of the crossing, appellee offered in evidence an ordinance of the councils of the city of Johnstown requiring the appellant to erect and maintain safety gates at the crossing in question. This ordinance provides that the appellant company is required: " to erect, maintain and operate safety gates at the intersection of the Pennsylvania railroad with the public road known as the Brownsville road in the sixteenth ward. Said safety gates shall be maintained and operated on each side of the railway and shall be closed at the approach of all trains or locomotives to said intersection and opened as soon as the same shall have passed."

The learned trial judge in answer to the appellant's fourth point said :

" The only effect this testimony (referring to the ordinance) could have is that of showing the dangerous character of the crossing. That the city of Johnstown attempted to make the defendant company erect safety gates there we say could only go to indicate to you the dangerous character of the crossing. You have no right to hold the railroad company responsible for not erecting safety gates because they would have been one means of warning persons about to go over the crossing of the dangerous character of the crossing. The city could not have compelled the railroad company to have erected safety gates in Lower Yoder township because that territory is not within the jurisdiction of the city of Johnstown. This ordinance can only go to show the dangerous character of the crossing and we submit this testimony to you for that purpose only."

The ordinance was admittedly invalid and beyond the power of councils to pass it. At most it amounts to nothing more than expressions of individual opinions of the members of councils that they thought the crossing dangerous. If each member had upon the floor of councils declared such to be his opinion and a minute had been made to that effect, clearly such minute would not be competent evidence to establish the dangerous character of the crossing. The question was one of fact for the jury, and that fact was not to be determined by opinions of members of councils expressed there. The ordinance was invalid, without authority and ineffective, and imposed no

duty or obligation upon appellant. So void and inoperative by reason of the want of power to make the same, by no process of reasoning can it be said to be competent proof tending to prove the dangerous character of the crossing. This was not a case where the alleged negligent act done is in violation of a valid existing ordinance relating to the act, and where it alone is not evidence of negligence but where it, with the other circumstances, is for the jury in determining the question of negligence.

In the case of Ubelmann v. American Ice Company, 209 Pa. 398, where an ordinance in regard to elevators had been offered in evidence, Mr. Justice BROWN, in discussing ordinances as evidence says :

" Ordinances and their violation are admissible, not as substantive and sufficient proof of the negligence of the defendant, but as evidence of municipal expression of opinion on a matter as to which the municipal authorities had acted, that the defendant was negligent, and are to be taken into consideration with all the other facts in the case."

And after discussing the various cases upon the subject he says :

" The only effect of the introduction of these ordinances was to confuse and mislead the jury. Though there was no violation of them, so far as they related to the specific act of negligence charged, zealous counsel may have led the jury to believe that there was, and to the undiscriminating mind such a conclusion was more than possible. Even if there had been a violation of other sections of the ordinance of 1900 than the clause quoted, such violation would have had no relevancy to the issue the jury were trying."

Thus ordinances may be competent for a limited purpose and then only in connection with other evidence. As they involve duties in regard to the municipality or obligations relating to them, it is aptly said in the opinion, supra, they are not admissible as substantive or sufficient proof but as evidence of municipal expression of opinion. Within authoritative action, they may be evidence of such opinion, but beyond that they cannot be. A void ordinance is no ordinance and is not an expression of any opinion. It is a tabula rasa and has no significance.

The learned trial judge erred in admitting the alleged ordi-

nance in evidence and in his answer to appellant's fourth point, and the judgment must, therefore, be reversed and a new trial awarded.   But it may be proper to add that the duty to stop, look and listen is an unbending rule and when a person is killed at a crossing, the presumption arises that he has done his duty in that regard.   That proof intended to be confirmatory of the performance of a duty by stopping, looking and listening, does not when so intended, necessarily rebut the presumption : that the rate of speed at which a train may pass a crossing, must in view of its environments and locality, be shown to be dangerous and under the circumstances such as would constitute negligence arising from a failure of duty imposed by law ; that a jury is not authorized to determine the speed of an approaching train and having done so, then arbitrarily fix such speed as the standard that would be dangerous ; that there is no failure of duty if proper signals be given of a train approaching a crossing at a rate of speed that, in view of its locality and surroundings may be warranted, and proofs of such signals to negative negligence are not to be disregarded by a jury upon its arbitrary determination of the speed as dangerous.

The judgment is reversed and a venire de novo is awarded.